## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRED DONALDSON, ALBERT )
WALTER, III, and MARY CLAWSON, )
Individually and on behalf of all those )
similarly situated, )
           )
           Plaintiffs, )
           )
vs. )    CIVIL NO. 06-003-GPM
           )
PHARMACIA PENSION PLAN, )
PHARMACIA CASH BALANCE PENSION )
PLAN, PHARMACIA CORPORATION, )
PHARMACIA & UPJOHN COMPANY, and )
PFIZER, INC., )
           )
           Defendants. )

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

     This action is before the Court on the Motion to Dismiss Plaintiffs' Complaint brought by Defendants Pharmacia Cash Balance Pension Plan, Pharmacia Corporation, Pharmacia & Upjohn Company, and Pfizer, Inc. (Doc. 25).[1]  For the following reasons, Defendants' motion to dismiss is **DENIED**.

### INTRODUCTION

     Plaintiffs Fred Donaldson, Albert Walter, III, and Mary Clawson bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA") on behalf of themselves and a proposed class of participants in the Pharmacia Cash Balance Pension Plan

---

1.    Defendant Pharmacia Pension Plan was voluntarily dismissed from this action by notice of Plaintiffs on March 14, 2006.  *See* FED. R. CIV. P. 41(a)(1)(i); *Scam Instrument Corp. v. Control Data Corp.*, 458 F.2d 885, 888-89 (7th Cir. 1972).

("the Plan"), Defendant herein.  Defendants Pharmacia Corporation ("Pharmacia"), Pharmacia &

Upjohn Company, and Pfizer, Inc., are the administrators and sponsors of the Plan.

 To set out Plaintiffs' claims properly, some discussion of the substantive law of ERISA is

necessary.  A "defined benefit plan" under ERISA is a pension plan other than an individual account

plan.  *See* 29 U.S.C. § 1002(35).  In a typical defined benefit plan, benefits are furnished based on

a formula established by a plan document, independent of the level of funding.  *See In re Defoe*

*Shipbuilding Co.*, 639 F.2d 311, 313 (6th Cir. 1981).  "A defined benefit plan . . . consists of a

general pool of assets rather than individual dedicated accounts.  Such a plan, 'as its name implies,

is one where the employee, upon retirement, is entitled to a fixed periodic payment.'"  *Hughes*

*Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (quoting *Commissioner v. Keystone Consol.*

*Indus., Inc.*, 508 U.S. 152, 154 (1993)).  This is in contrast, of course, to a "defined contribution

plan," in which an employer allocates an amount to an account created for an employee, so that the

employee's pension entitlement is the value of his or her account, consisting of the employer's

annual contributions and any earnings derived from the employee's investment of those deposits.

*See* 29 U.S.C. § 1002(34); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 758 (7th

Cir. 2003).

 In a defined benefit plan, an employer provides employees with a guaranteed benefit at

"normal retirement age," which the plan selects but which cannot be later than age 65.  *See* 29

U.S.C. § 1002(24); *Berger*, 338 F.3d at 758.  This benefit is typically calculated as a percentage of

an employee's compensation multiplied by his or her years of service.  *See Berger*, 338 F.3d

at 757-58.  The pension entitlement provided by the plan is an employee's "accrued benefit" at

normal retirement age.  ERISA explains, "The term 'accrued benefit' means . . . in the case of a

defined benefit plan, the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). *See also Berger*, 338 F.3d at 759.  The statute requires that the accrued benefit be provided in the form of an annuity at normal retirement age.  *See* 29 U.S.C. § 1054(c)(3).  A plan may offer optional benefit forms, such as a lump sum, but they cannot be less than the actuarial equivalent of the annuity at normal retirement age.  *See Berger*, 338 F.3d at 759; *Esden v. Bank of Boston*, 229 F.3d 154, 162-64 (2$^d$ Cir. 2000).

A typical cash balance pension plan purports to compute an employee's accrued benefit as a hypothetical account balance, to which putative "pay credits" and "interest credits" are added each year.  In truth, "the employee has no actual account, the employer makes no contributions to an employee account, and so there is no account balance to which interest might be added." *Berger*, 338 F.3d at 758.  Instead, the employee's pension entitlement under such a plan remains the accrued benefit earned each year, which equals the amount of both that year's pay credit and the value of the future "interest credits" on that amount through the date of the employee's normal retirement age, divided by an annuity factor specified in the plan. *See id*. at 758-59; *Esden*, 229 F.3d at 158-59.  Importantly, although a cash balance plan has superficial similarities to an individual account plan or defined contribution plan, legally it is a defined benefit plan for ERISA purposes. *See Berger*, 338 F.3d at 757-58; *Esden*, 229 F.3d at 158; *Lyons v. Georgia-Pacific Corp.*, 221 F.3d 1235, 1237-38 (11th Cir. 2000).

Plaintiffs allege that, under the terms of the Plan, a Cash Balance Account ("CBA") is established on behalf of each Plan participant.  *See* Complaint ¶ 30.  Each participant's CBA is credited with an annual "contribution credit" equal to a specified percentage of that participant's

eligible pay for each year of employment ranging from 3% to 7% depending upon the participant's age. *See id.* ¶ 31.  Also, each participant's CBA is credited with a monthly "interest credit" based on the average interest rate on thirty-year Treasury bonds for October of the prior calendar year, with a minimum rate of interest credit of 5% and a maximum rate of interest credit of 10%. *See id.* Finally, each participant's CBA is credited with an annual "transition credit" equal to a specified percentage of the participant's eligible pay ranging from 2% to 6% depending upon the participant's age and limited to the ten years between January 1, 1997, and December 31, 2006. *See id.* Additionally, the Plan establishes on behalf of participants in predecessor plans a Prior Plan Account ("PPA"), which begins with a balance representing the lump-sum value of the participant's accrued benefit under predecessor plans as of December 31, 1996. *See id.* ¶¶ 32-33.  Such a PPA is credited with monthly "pay credits" at an annual rate of 4% while the participant maintains employment with Pharmacia, and with monthly "interest credits" at an annual rate of 8.5% until the participant attains age 55. *See id.* ¶ 34.

Plaintiffs' complaint asserts five counts.  Count I alleges that, because under the Plan any participant who reaches the age of 55 no longer receives monthly interest credits at a rate of 8.5% on his or her PPA and instead the rate of benefit accrual on the PPA is reduced to zero, the Plan violates ERISA age-discrimination rules applicable to defined benefit plans prohibiting any cessation or reduction in the rate at which an employee accrues benefits on account of age. *See* 29 U.S.C. § 1054(b)(1)(H)(i); *Wells v. Gannett Ret. Plan*, 385 F. Supp. 2d 1101, 1102 (D. Colo. 2005); *Cooper v. IBM Personal Pension Plan*, 274 F. Supp. 2d 1010, 1015-17 (S.D. Ill. 2003).  Count II alleges that the Plan violates ERISA by failing to pay lump sum benefits that are the actuarial equivalent of a participant's accrued benefit projected to normal retirement age, then

reduced to present value.  *See Berger*, 338 F.3d at 759; *Esden*, 229 F.3d at 162-64; *West v. AK Steel Corp Ret. Accumulation Pension Plan*, 318 F. Supp. 2d 579, 583 (S.D. Ohio 2004); I.R.S. Notice 96-8, 1996-1 C.B. 359.  Count III alleges that the Plan violates ERISA's anti-backloading provisions, which prohibit defined benefit plans from establishing minimum accrual rates that cause a participant's benefits to accrue very slowly until the participant is near retirement age.  *See* 26 U.S.C. § 411(a), (b)(1); 29 U.S.C. § 1054(b)(1)(B); 26 C.F.R. § 1.411(b)-1(b); *Jones v. UOP*, 16 F.3d 141, 143 (7th Cir. 1994).  Count IV alleges that, because under the Plan participants experience a reduction in the actuarial value of annual credits to their CBAs based upon their age, the Plan violates ERISA age-discrimination rules applicable to defined benefit plans.  Finally, Count V asserts a demand to recover benefits due Plan participants under the terms of the Plan, to enforce their rights under the terms of the Plan, and to clarify their rights to future benefits under the terms of the Plan.  Count I through Count IV of Plaintiffs' complaint are brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); Count V of the complaint is brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Defendants have moved to dismiss Plaintiffs' claims on two grounds.  First, Defendants assert that Plaintiffs have failed to exhaust their administrative remedies.  Second, Defendants argue that Count I through Count IV of Plaintiffs' complaint assert claims for legal relief, not equitable relief, and therefore cannot be brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having reviewed carefully the parties' submissions regarding these issues, together with all exhibits thereto, and having conducted a hearing on Defendants' motion to dismiss, the Court now addresses Defendants' arguments in support of dismissal.

<u>DISCUSSION</u>

**A.      Legal Standard**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a plaintiff's complaint to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6); *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). "The essence of a defendant's Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999)). In evaluating a Rule 12(b)(6) motion, a court must take a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Swierkiewicz v. Sorema N. A .*, 534 U.S. 506, 508 n.1 (2002); *Strasburger v. Board of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 359 (7th Cir. 1998). A complaint should be dismissed for failure to state a claim for relief only if "no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). *See also Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).

**B.      Defendants' Motion to Dismiss**

**1.      Exhaustion of Administrative Remedies**

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court." *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 807 (7th Cir. 2000). However, in light of ERISA § 503, 29 U.S.C. § 1133, directing employee benefit plans to provide adequate

written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, this Circuit interprets ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute.  *See Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991).  Importantly, although some circuits hold that exhaustion of administrative remedies is not a requirement in suits alleging violations of ERISA, as opposed to violations of the terms of an ERISA plan, *see, e.g., Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889, 891-92 (3d Cir. 1986), this Circuit holds that the exhaustion doctrine is applicable in cases alleging statutory violations of ERISA.  *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (holding that an ERISA action alleging wrongful discharge by an employer to avoid paying plan benefits was subject to dismissal for failure to exhaust administrative remedies); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1243-45 (7th Cir. 1985) (same).

"[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court . . . . [T]his determination will only be disturbed on appeal if the lower court has clearly abused its discretion – in other words, if the lower court's decision 'is obviously in error.'"  *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997) (quoting *Lindemann*, 79 F.3d at 650).  *See also Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) ("[W]e review a district court's decision to dismiss a complaint on exhaustion grounds for an abuse of discretion.").  An ERISA plaintiff's failure to exhaust administrative remedies may be excused where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile.  *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996).

In exercising its discretion regarding dismissal of this action for failure to exhaust administrative remedies, the Court considers the policies underlying the exhaustion requirement. First, exhaustion of administrative remedies encourages informal, non-judicial resolution of disputes about employee benefits. "[T]he institution of . . . administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned." *Kross*, 701 F.2d at 1244-45. Second, exhaustion protects the autonomy of plan administrators, by shielding the exercise of their discretion from excessive judicial interference. "Congress intended fund trustees to have primary responsibility for claim processing, as evidenced by the specific requirement in [ERISA] § 503, 29 U.S.C. § 1133, of a claim and appeal procedure for every employee benefit plan. To make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act." *Robyns*, 130 F.3d at 1235. "[T]he trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement . . . enhance[s] their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." *Kross*, 701 F.2d at 1245.

Third, the requirement of exhaustion of administrative remedies helps to prepare the ground for litigation in case administrative dispute resolution proves unavailing. "[A] primary reason for the exhaustion requirement . . . is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies." *Kross*, 701 F.2d at 1245. *See also Ames v. American Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999) (noting that,

through internal plan procedures, "the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review"). Compelling parties to exhaust administrative remedies can help a court by requiring parties pre-suit "to develop a full factual record" and by enabling the court to "take advantage of agency expertise." *Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund*, 673 F.2d 931, 935 (7th Cir. 1982), *vacated on other grounds*, 463 U.S. 1222 (1983). *See also Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 838 (S.D. Ind. 2000).

This case is a poor candidate for exhaustion of administrative remedies. Defendants concede that, under the terms of the Plan document, *see* Doc. 26, Ex. A, Plaintiffs and the members of the putative class have received all of the benefits to which they are entitled. *See Costantino v. TRW, Inc.*, 773 F. Supp. 34, 44 (N.D. Ohio 1991) (in an ERISA class action challenging the legality of a plan's method of computing benefits, declining to order exhaustion where, following dismissal, the plan administrators "would simply re-calculate [the class members'] benefits as provided for in the [plan] and reach the same result").[2] Although Defendants hint that they might amend the Plan should Plaintiffs persuade them in the course of administrative procedures that various Plan provisions are illegal, on the face of the Plan document the Court fails to see what administrative remedy Plaintiffs have under the Plan's terms. This lawsuit is not frivolous, and the fact that the

---

2. The Plan document was submitted to the Court in support of Defendants' motion to dismiss. In ruling on a Rule 12(b)(6) motion, the Court can treat as part of the pleadings documents that are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). *See also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *SEC v. Park*, 99 F. Supp. 2d 889, 893 (N.D. Ill. 2000); *Marks v. CDW Computer Ctrs., Inc.*, 901 F. Supp. 1302, 1309 (N.D. Ill. 1995).

Plan practices at issue have been the subject of a series of high-profile ERISA class actions in recent years, *see, e.g., Berger*, 338 F.3d at 759; *Esden*, 229 F.3d at 162-64; *Cooper*, 274 F. Supp. 2d at 1015-17, apparently without influencing the behavior of the Plan administrators, makes the Court skeptical that administrative procedures will yield a non-judicial resolution of the claims of Plaintiffs and the putative class.  Considerations of cost and efficiency favor resolving the claims raised in this case in this Court, rather than piecemeal through scores of separate administrative proceedings by Plaintiffs and members of the putative class, *see Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 420-21 (6th Cir. 1998), just as the public interest weighs in favor of judicial resolution of the questions of statutory interpretation presented by this case.  *See Zipf*, 799 F.2d at 893.

Similarly, this case is not one in which the development of an administrative record is likely to be helpful to the Court.  The issues presented by this case concern matters of statutory interpretation that the Court will consider *de novo*, without deference to the opinions of the Plan's administrators.  *See Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 809 (S.D. Ill. 2002) ("[A] court reviews questions of law *de novo*, regardless of whether the plan vests the plan administrator with discretion . . . . The issues presented in this case involve questions of law and not plan interpretation.  This Court's review of those issues is *de novo* and not under an arbitrary and capricious standard.").  *See also Huppeler v. Oscar Mayer Foods Corp.*, No. 93-C-370-S, 1993 WL 730699, at *2 (W.D. Wis. Oct. 28, 1993) (declining to order exhaustion so that an ERISA plaintiff could debate the correct interpretation of legal precedent with plan administrators).[3]  For

---

3.    This is not to say, of course, that in every case alleging a statutory violation of ERISA an administrative record would not be helpful.  However, the Court notes that the cases in which the United States Court of Appeals for the Seventh Circuit has applied the exhaustion doctrine to claims for statutory violations of ERISA, the particular statutory violation at issue has been the alleged wrongful discharge of a plan participant to avoid paying vested plan benefits.  *See Lindemann*, 79

much the same reason, the Court concludes that this case does not implicate the autonomy of the Plan's administrators, given that compliance with ERISA is not a matter of a plan administrator's discretion.  *See Hickey v. Chicago Truck Drivers, Helpers & Warehouse Workers Union*, 980 F.2d 465, 468 (7th Cir. 1992) (holding that a cost-of-living adjustment ("COLA") was an accrued benefit for ERISA purposes because "[t]he term 'accrued benefit' has a statutory meaning, and the parties cannot change that meaning by simply labeling certain benefits as 'accrued benefits' and others, such as the COLA, as 'supplementary benefits.'").

At the hearing the Court conducted regarding Defendants' motion to dismiss, Defendants' counsel largely conceded that the question of the validity of Count I, Count III, and Count IV of Plaintiffs' complaint alleging age discrimination in violation of ERISA is controlled by this Court's decision in *Cooper v. IBM Personal Pension Plan*, rendering exhaustion unnecessary as to those claims.  *See* Doc. 45 at 7.[4]  Thus, Defendants' counsel staked his argument for exhaustion on Count II of Plaintiffs' complaint, which, as noted, alleges that the Plan violates ERISA by failing to pay lump sum benefits that are the actuarial equivalent of a participant's accrued benefit projected

_____

F.3d at 648-50; *Kross*, 701 F.2d at 1246.  A case involving alleged wrongful discharge under ERISA is one that presents disputed, individualized facts that can be determined in the administrative process to resolve a plan beneficiary's claim.  Also, such a case does not implicate issues about the overall illegality of a plan under the statute.  In this case, by contrast, the claims of Plaintiffs and the putative class present no individualized questions as to which administrative factfinding might be helpful, and the legality of the structure of the Plan is squarely at issue.

4.    As discussed, Count V of Plaintiffs' complaint merely sets forth under ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), an alternative statement of Counts I-IV, which are brought under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3).  At the hearing, the Court expressed some skepticism about the viability of Count III, which asserts that certain allegedly age-discriminatory provisions of the Plan constitute illegal "backloading" of benefits, a skepticism that seems to be borne out by a decision from a sister court submitted to this Court by Plaintiffs, *see Richards v. FleetBoston Fin. Corp.*, No. CIV.A.3:04CV1638(JCH), 2006 WL 980565, at **15-16 (D. Conn. Mar. 31, 2006), although of course the Court need not decide the issue at this time.

to normal retirement age, then reduced to present value.  *See id*. at 7-10.  The Court sees little benefit in dismissing this case so that Plaintiffs and members of the putative class can exhaust their administrative remedies (if any) solely as to Count II.  Dismissal seems particularly inappropriate given that a proper calculation of lump-sum benefits for numerous class members doubtless hinges on a successful outcome to Plaintiffs' claims that the Plan's strictures on benefit accrual are age-discriminatory.  Moreover, the Court's review of the Plan document shows that exhaustion as to Count II is unnecessary.  The portion of the Plan document defining the "Actuarial Equivalent" of optional benefits under the Plan provides, "[U]nder . . . Option 4 under Section 7.3(d) [governing lump-sum distributions] the following . . . interest rate shall be used:  . . . the applicable interest rate under [Internal Revenue] Code Section 417(e)(3) for October of the year prior to the year containing the Participant's Annuity Starting Date."  Doc. 26, Ex. A at 5, 6.  The use of the interest rate provided under 26 U.S.C. § 417(e)(3) rather than the normal crediting rate under a plan both to project lump-sum benefits to normal retirement age, then to discount them to present value, was precisely the issue at the heart of the *Berger* case.

In *Berger* the defendant plan computed the value of a benefit distributed before normal retirement by applying the interest rate under 26 U.S.C. § 417(e)(3) instead of the normal crediting rate under the plan, then applying the same section 417(e)(3) rate to reduce the benefit to present value.  *See* 338 F.3d at 759-60.  The *Berger* court concluded that under Internal Revenue Service Notice 96-8 the crediting rate under the plan must be applied up to normal retirement age, then reduced pursuant to section 417(e)(3).  *See id*. at 761-62.  The court explained that, because the plan used the same rate to project the value of a lump sum to normal retirement age, then discount it to present value, the projection was, in effect, a wash:  "The two rates, the interest rate and the

discount rate, being identical, canceled, with the result that the lump sum that the departing employee received was his cash balance on the date of his departure." *Id*. at 760. The court explained further:

> To be tax-qualified, a cash balance plan must be "frontloaded," that is, must include interest on the money in the employee's hypothetical account for the period between his leaving the employer and his reaching age 65. Otherwise, because of discounting, the cash balance pension benefit would be worth very little if the employee left the company's employ many years before he reached 65, and the Internal Revenue Code denies tax benefits to, and ERISA outright forbids, pension-plan terms that tend to lock an employee into his current employment by "backloading" his pension entitlement excessively, that is, by configuring it so that it is worth very little unless the employee stays with the company until normal retirement age.

*Id*. at 762 (citations omitted). The court concluded that, under the plan terms, participants "are, in short, being invited to sell their pension entitlement back to the company cheap, and that is a sale that ERISA prohibits." *Id*.

In this case, under the Plan terms what Plan participants who elect to take a lump-sum distribution of their Plan benefits before normal retirement age receive is the amount in their CBA as of the date they left employment with the Plan sponsors. The Court is not required to decide this issue at this time. However, in light of the plain language of the Plan document, the Court is of the view that an administrative record regarding Count II of Plaintiffs' complaint would not be of any assistance in deciding this case. *See Call v. Ameritech Mgmt. Pension Plan*, Civil No. 01-717-GPM, at 1-2 (S.D. Ill. July 9, 2004) (order denying motion for reconsideration) (rejecting a plan administrator's "*ex cathedra* pronouncement that the term 'accrued benefit'" as used in a plan document did not carry the meaning it has under ERISA: "Defendant's argument is akin to insisting that a cat is a dog because 'I am a veterinarian and say it is so.'"). The Court concludes in its discretion that exhaustion of administrative remedies would be futile in this case.

2.   **Whether Counts I-IV of Plaintiffs' Complaint Seek Equitable Relief under ERISA**

As discussed, Count I through Count IV of Plaintiffs' complaint are brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides, "(a) A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Defendants contend that Count I through Count IV must be dismissed because they seek not equitable relief but legal relief, specifically, compensatory damages, that are not available under the statute. The Court disagrees. Under controlling precedent of this Circuit and of the Supreme Court of the United States, most recently *Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S. Ct. 1869 (2006), Plaintiffs have properly asserted claims for equitable relief under ERISA.

It is settled law in this Circuit that awards of money damages are available as a component of equitable relief. In *May Department Stores Co. v. Federal Ins. Co.*, 305 F.3d 597 (7th Cir. 2002), the court stated expressly that it is not the case "that money can never be recovered in a suit in equity." *Id*. at 602. The court noted that money damages traditionally have been available as an element of an equitable remedy under "the equity clean-up doctrine, which allows an equitable suitor to obtain incidental damages relief in his equity suit so as to spare himself, the defendant, and the judiciary the burden of two suits on the same claim." *Id*. at 603. *See also In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004). This is consistent of course with historic equity practice. *See Greene v. Louisville & Interurban R.R. Co.*, 244 U.S. 499, 520 (1917) (stating that once equity "properly acquire[s]

jurisdiction of a cause for any purpose, it should dispose of the entire controversy and its incidents, and not remit any part of it to a court of law."). *See also* A. Leo Levin, *Equitable Clean-up and the Jury: A Suggested Orientation*, 100 U. Pa. L. Rev. 320 (1951); John E. Sanchez, *Jury Trials in Hybrid and Non-Hybrid Actions: The Equitable Clean-Up Doctrine in the Guise of Inseparability and Other Analytical Problems*, 38 DePaul L. Rev. 627, 641-48 (1989). Also, the *May* court noted, "wrongful withholding of benefits due can entitle the beneficiary to impose a constructive trust on interest on the withheld benefits, an equitable remedy that results in a money payment to the plaintiff." 305 F.3d at 603.

In *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), the Court held that the term "equitable relief" for purposes of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), refers only to "those categories of relief that were typically available in equity." 534 U.S. at 210 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)) (emphasis omitted). The Court stated further that "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. The Court went on to say that "whether [the relief] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* at 213 (quoting *Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). The Court noted:

> In cases in which the plaintiff . . . could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, . . . the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought . . . to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money . . . . Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

*Id.* at 213 (citations and emphasis omitted). The Court went on to say:

In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where . . . the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, . . . and the plaintiff . . . cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant] . . . . Thus, for restitution to lie in equity, the action generally must seek . . . not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id*. at 213-14 (citations and emphasis omitted).

In *Knudson* the petitioners had paid medical expenses for one of the respondents, a beneficiary under a health plan covered by ERISA. *See* 534 U.S. at 207. The health plan provided the plan a right to recover from the beneficiary any payments paid by the plan and recovered from a third party. *See id*. The petitioners sought to enforce this reimbursement provision. *See id*. But the funds to which the petitioners claimed entitlement were not in the respondents' possession. *See id*. at 214. The Court found that "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred." *Id*. (emphasis omitted). This kind of restitution – the extension of personal liability rather than the imposition of a constructive trust on particular property – was a legal, and not equitable, remedy. *See id*. Consequently, the Court held that ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), did not authorize the petitioners' claim for restitution. *See* 534 U.S. at 218.

In *Administrative Committee of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, 338 F.3d 680 (7th Cir. 2003), the court, applying *Knudson*, held that a claim by a plan

fiduciary against a plan beneficiary to recover funds advanced to the beneficiary for medical expenses was proper under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). The beneficiary, who had been injured in a car accident, later entered a settlement with the driver responsible for the accident, and the plan asserted subrogation rights as to the settlement funds. The court distinguished the case from *Knudson*, because the beneficiary in *Knudson* had no control or possession of specifically identifiable funds claimed by the petitioners' plan:

> The Committee, as a fiduciary, was seeking to impose a constructive trust on the funds held in Varco's reserve bank account. Unlike the legal action addressed in *Great-West Life*, the funds at issue here are identifiable, have not been dissipated, and are still in the control of a Plan participant due to the fact that [Varco's attorney] placed them in a reserve account in Varco's name when they were disbursed. Finally those funds, . . . in good conscience, . . . belong to the Committee. The Plan clearly states that Varco's rights to recover benefits may be subrogated when there is a settlement and that "[t]he Plan has first priority with respect to its right to reduction, reimbursement and subrogation." Under similar facts, we have held that a suit to impose a constructive trust "nestles comfortably" within ERISA's concept of equity.

338 F.3d at 687 (quoting *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)). The court held that the plan's action was one for equitable relief under ERISA because the plan sought restitution of funds due that were specifically identifiable and within the possession or control of the beneficiary:

> . . . Varco argues that this is essentially a legal claim asserted by the Committee in order to enforce its contract rights under the Plan because . . . a claim for money due and owing under a contract is . . . quintessentially an action at law . . . . Varco would have a valid argument under traditional principles of equity if an identifiable *res* did not exist to which the Committee could claim a legally recognized right . . . . Similarly, an argument would exist if the Committee could not trace its property to a specific fund of money . . . . Neither of those situations, however, is presented here. Thus, under *Great-West Life*, the reimbursement action by the Committee in this unique case is equitable because the funds the Committee seeks to recover are identifiable, are in the control of a defendant, and the Committee is rightfully entitled to the monies under the terms of the Plan. Because those elements are met here, the Committee's claim is equitable under § 502(a)(3)(B) of ERISA[.]

338 F.3d at 687-88.  *See also Forsling v. J.J. Keller & Assocs., Inc.*, 241 F. Supp. 2d 915, 919

(E.D. Wis. 2003) (applying *Knudson* and allowing equitable relief where the funds at issue were

identifiable, had not been dissipated, were still in the control of an insurer, and in good conscience

belonged to a plan sponsor pursuant to the subrogation provisions of its plan)).

The test of whether relief sought under ERISA is equitable or legal set out in *Varco* is

sometimes called the "possession" test.  "Under this theory, *Knudson* . . . prohibit[s] actions by

ERISA plans to seek reimbursement only . . . if the insured is not in the possession of clearly

identifiable proceeds."  Roger M. Baron, *Public Policy Considerations Warranting the Denial of*

*Reimbursement to ERISA Plans: It's Time to Recognize the Elephant in the Courtroom*, 55

Mercer L. Rev. 595, 612 (2004).  In addition to this Circuit, after *Knudson* three sister circuits

adopted the possession standard.  *See Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 218-19

(4th Cir. 2005); *Administrative Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393

F.3d 1119, 1124-25 (10th Cir. 2004); *Bombardier Aerospace Employee Welfare Benefits Plan v.*

*Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003).  *See also Great-West Life &*

*Annuity Ins. Co. v. Brown*, 192 F. Supp. 2d 1376, 1380-81 (M.D. Ga. 2002).  Two other circuits

rejected the possession standard, insisting that the correct test of whether relief sought under ERISA

is equitable or legal is the nature of the remedy sought.  *See Providence Health Plan v. McDowell*,

385 F.3d 1168, 1174 (9th Cir. 2004); *Qualchoice, Inc. v. Rowland*, 367 F.3d 638, 648-50 (6th Cir.

2004).  For example, in *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164 (9th Cir. 2002), an action by a

plan fiduciary seeking a declaratory judgment that funds in escrow belonged to the plan

administrator together with specific performance of a reimbursement obligation, the court held that

the plan sought "to enforce a contractual obligation for the payment of money, a classic action at law

and not an equitable claim," although the funds at issue were specifically identifiable.  *Id*. at 1166.

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, the Supreme Court recently resolved the split in the circuits in favor of the possession standard.  *Sereboff* was a lawsuit by Mid Atlantic Medical Services, Inc. ("Mid Atlantic"), the fiduciary of certain ERISA group health insurance plans sponsored by Marlene Sereboff's employer that provided coverage for Mrs. Sereboff and her husband.  *See* 126 S. Ct. at 1872.  After the Sereboffs were injured in an automobile accident, the plan advanced payments for their medical expenses.  *See id*.  The plan contained an "Acts of Third Parties" subrogation provision, which accorded Mid Atlantic, as the plan's fiduciary, the right to recover any payments made to beneficiaries by third parties for costs associated with an injury resulting from the acts of another person or party.  *See id*.  The Sereboffs brought suit in state court against the party allegedly responsible for their injuries.  *See id*.  During the pendency of the state-court litigation, Mid Atlantic repeatedly informed the Sereboffs and their attorney that it had paid medical benefits on behalf of the Sereboffs and that, according to the plan, Mid Atlantic was entitled to reimbursement for those expenditures should the state-court litigation be successful.  *See id*. at 1872-73.  The Sereboffs subsequently settled the state-court litigation.  *See id*. at 1873.  Upon receipt of the settlement funds, however, they refused to recognize Mid Atlantic's subrogation claim and to reimburse it for the benefits it had paid on their behalf.  *See id*.  Their attorney then disbursed the funds to the Sereboffs and his law firm, according to their representation agreement in the state-court litigation, whereupon the Sereboffs placed the funds into their investment accounts.  *See id*.

Mid Atlantic sued the Sereboffs in the United States District Court for the District of Maryland, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  *See* 126 S. Ct. at 1873.  The district court found for Mid Atlantic, and the judgment was affirmed.  *See id*.  The Supreme Court

granted certiorari to resolve the circuit split regarding the proper test for whether relief is equitable or legal under ERISA.  *See id*.  The Court, per Chief Justice Roberts, held unanimously that the relief sought by Mid Atlantic was equitable within the meaning of ERISA.  In ruling that the relief sought by Mid Atlantic was equitable, the Court noted the factual similarity between the *Sereboff* case and *Knudson*.  The Court distinguished *Knudson* because in that case the plan couched its claim for relief in terms of affixing personal liability on the plan beneficiary for a contractual obligation to pay money, rather than seeking to levy on an identifiable fund held by the individual against whom recovery was sought, as its requested relief amounted only to a claim for a legal remedy not otherwise provided under ERISA.  *See* 126 S. Ct. at 1873-74.  The Court explained that in *Knudson* the plan could not establish a claim for equitable relief under ERISA because the funds at issue were not in the respondents' possession:

> To decide whether the restitutionary relief sought by Great-West was equitable or legal, we examined cases and secondary legal materials to determine if the relief would have been equitable . . . [i]n the days of the divided bench . . . . We explained that one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on . . . particular funds or property in the defendant's possession . . . . That requirement was not met in *Knudson*, because . . . the funds to which petitioners claim[ed] an entitlement . . . were not in Knudson's possession, but had instead been placed in a . . . Special Needs Trust . . . under California law . . . . The kind of relief Great-West sought, therefore, was . . . not equitable – the imposition of a constructive trust or equitable lien on particular property – but legal – the imposition of personal liability for the benefits that [Great-West] conferred upon [Knudson] . . . . We accordingly determined that the suit could not proceed under § 502(a)(3).

126 S. Ct. at 1874.

However, the Court continued, though in *Knudson* the plan's claim for equitable relief was doomed by the fact that there were no identifiable funds against which an equitable lien could be placed,

> That impediment to characterizing the relief in *Knudson* as equitable is not present here . . . . [I]n this case Mid Atlantic sought . . . specifically identifiable . . . funds that were . . . within the possession and control of the Sereboffs[, namely,] that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and . . . preserved [in the Sereboffs'] investment accounts . . . . Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability . . . for a contractual obligation to pay money." It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law. ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise. This Court in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does.

126 S. Ct. at 1874 (quoting *Knudson*, 534 U.S. at 210) (emphasis in original). The Court explained that Mid Atlantic was not seeking to obtain a money judgment against the Sereboffs, but instead was demanding imposition of a constructive trust on the settlement funds held by the Sereboffs to the extent of the plan's reimbursement rights. *See id*. In contrast to *Knudson*, Mid Atlantic identified a specific fund, separate from the Sereboff's other assets, on which a constructive trust should be placed: the plan provided that the plan's interest extended to all recoveries from a third party, whether by lawsuit or settlement, and fixed the share to which the plan was entitled. *See id*. According to traditional equitable principles, the Court concluded, the Sereboffs became equitable trustees of the funds to which the plan was entitled once the settlement came into their possession. *See id*. at 1875.

In *Sereboff* the Court rejected the plan beneficiaries' contention that the relief sought by the plan was not equitable because the plan could not trace its property or monetary interest to particular funds or assets held by the beneficiaries. The Court held that strict tracing rules do not apply to cases of equitable restitution when an equitable lien is imposed by agreement. *See* 126 S. Ct.

at 1875. The Court reasoned that the "Acts of Third Parties" provision of the plan triggered the "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id*. (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)). Thus the Court found that the Sereboffs' undertaking pursuant to the "Acts of Third Parties" provision of the plan created a lien on the portion of the settlement from the Sereboffs' state-court litigation due to Mid Atlantic that the plan could follow into the Sereboffs' hands as soon as the fund was identified. *See id*. Also, the Court rejected the Sereboffs' argument that, if the plan's claim were equitable, it was subject to certain defenses available in actions for equitable subrogation. The Court held that Mid Atlantic's claim was not equitable merely because it was a subrogation claim. *See id*. at 1877. Rather, the Court explained, Mid Atlantic's action was brought to enforce the "Acts of Third Parties" provision, which thus qualified it as an equitable remedy because it was indistinguishable from an action to enforce an equitable lien established by agreement. *See id*.

In the instant case, construing Plaintiffs' allegations in the light most favorable to them and assuming the truth of Plaintiffs' factual allegations, as the Court must at this juncture, Plaintiffs have properly asserted a claim for equitable relief under ERISA. Plaintiffs point to specifically identifiable funds that are within the possession and control of Defendants and which Plaintiffs assert in equity and good conscience belong to them. *See Sereboff*, 126 S. Ct. at 1874; *Knudson*, 534 U.S. at 213-14; *Varco*, 338 F.3d at 687. Plaintiffs have identified a fixed share of the fund assets to which they are equitably entitled, that is, the difference between what they have been paid and what they would be paid had Plan benefits been computed properly under ERISA. Plaintiffs' allegations are sufficient to assert an equitable duty on Defendants' part to convey to them the funds

at issue.  In *May* the Seventh Circuit instructed that the substantive provisions of ERISA are a term of any pension plan governed by the statute.  "[L]ike many other contracts, pension plans governed by ERISA contain provisions implied by law."  305 F.3d at 601 (citing *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952, 955-56 (7ᵗʰ Cir. 2002)).  Therefore, Defendants have voluntarily undertaken to convey to Plaintiffs all of the benefits to which they are legally entitled under ERISA.  *See Sereboff*, 126 S. Ct. at 1875.  The Court concludes that Count I through Count IV of Plaintiffs' complaint are properly brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  *See Berger v. Nazametz*, No. 00-CV-0584-DRH, 2002 WL 1774744, at *3 (S.D. Ill. July 22, 2002) (in an ERISA class action alleging that the defendant plan miscalculated lump-sum benefits, applying *Knudson* and holding that the plaintiffs properly asserted claims for equitable relief:  "The sum of money that was withheld from the Plaintiffs, and in good conscience belongs to the Plaintiffs, remains in the Defendants' possession.  The kind of restitution Plaintiffs seek is equitable and equitable restitution may be recovered under [ERISA].").  *Cf. Godshall v. Franklin Mint Co.*, 285 F. Supp. 2d 628, 634 (E.D. Pa. 2003) (holding that freelance-worker plaintiffs wrongfully excluded from plan participation could seek money damages in the form of equitable restitution and other remedies against the defendants, where the funds sought "could clearly be traced to property or funds in" the defendants' possession); *Wellmark, Inc. v. DeGuara*, 257 F. Supp. 2d 1209, 1216 (S.D. Iowa 2003) (allowing equitable relief under *Knudson* where a defendant had control of identifiable funds).[5]

_____

5.      To the extent Defendants challenge Plaintiffs' complaint on the grounds that Plaintiffs simultaneously assert claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), the Court rejects this contention.  Rule 8 of the Federal Rules of Civil Procedure specifically provides that "[a] party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate

<u>C<small>ONCLUSION</small></u>

The Motion to Dismiss Plaintiffs' Complaint brought by Defendants Pharmacia Cash Balance Pension Plan, Pharmacia Corporation, Pharmacia & Upjohn Company, and Pfizer, Inc. (Doc. 25) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  6/14/06


s/ G. Patrick Murphy_____
G. PATRICK MURPHY
Chief United States District Judge

---

counts or defenses . . . . A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." F<small>ED</small>. R. C<small>IV</small>. P. 8(e)(2).  Under Rule 8(e)(2), a plaintiff is not required to elect one remedy over another prior to final judgment.  "Although plaintiffs may not obtain a duplicative recovery, there is no requirement that they elect one remedy over another prior to final judgment."  *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1144 (E.D.N.C. 1986).  *See also Anderson v. W.R. Grace & Co.*, 628 F. Supp. 1219, 1234 (D. Mass. 1986) ("[P]laintiffs are entitled to present alternative theories of liability to the [factfinder]," provided appropriate measures are taken at trial "to prevent double recovery for any element of damage.").  Plaintiffs are entitled to assert claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), in the same complaint, and are not required to elect a remedy before entry of final judgment.